564 P.2d 87

In the Matter of James Burchett, Prisoner-patient at the Arizona State Hospital.

James BURCHETT, Appellant and Cross-Appellee,

v.

The STATE of Arizona ex rel. the DEPARTMENT OF CORRECTIONS and the Arizona State Hospital, Appellees and Cross-Appellants.

No. 2 CA–CIV 2163.

Court of Appeals of Arizona, Division 2.

Jan. 28, 1977.

Rehearing Denied March 29, 1977.

Review Denied May 10, 1977.

Lewis & Roca, by Paul G. Ulrich, Phoenix, for appellant and cross-appellee.

Bruce E. Babbitt, Atty. Gen. by Daniel W. Shuman and Cleon M. Duke, Asst. Attys. Gen., Phoenix, for appellees and cross-appellants.

## OPINION

HOWARD, Chief Judge.

This is another chapter in the continuing story of James Burchett. In 1961 he was sentenced to life imprisonment in the Arizona State Prison without possibility of parole for the kidnapping, rape and assault with intent to commit rape of a child. For the past few years Mr. Burchett has been attempting to stay in the Arizona State Hospital rather than in the Arizona State Prison. In the case of *In Re Burchett*, 23 Ariz.App. 11, 530 P.2d 368 (1975) we held

the order committing him to the state hospital was void. In September of 1975, he proceeded under A.R.S. § 31–224(B), voluntary commitment, and a hearing was held pursuant to subsection D of the foregoing statute. After hearing the testimony of the witnesses, the court found that appellant was a sexual psychopath suffering from a personality disorder and not eligible for treatment at the Arizona State Hospital. The court further ordered that the superintendent, pursuant to A.R.S. § 31–201.01(D), provide necessary medical and health services for appellant at the state prison or some other suitable facility within 30 days and if the superintendent failed to do so, he was ordered to provide psychiatric care and treatment for appellant at the Arizona State Hospital.

Appellant contends that the trial court erred in not committing him to the Arizona State Hospital. Appellees have cross-appealed contending that the trial court erred when it ordered the superintendent to provide psychiatric care and treatment for appellant at the Arizona State Hospital if he did not provide necessary medical and health services at the Arizona State Prison or some other suitable facility within 30 days.

Two psychiatrists testified for appellant. Dr. Maier Tuchler first treated Mr. Burchett in 1957. He diagnosed his problem as that of a personality disorder—exhibitionism. He stated that exhibitionism is a substantial mental disorder because it is socially unacceptable and creates a fantasy life for the individual with the disorder. He has seen Mr. Burchett frequently since he was confined to the Arizona State Prison in 1961. He stated that the mental problem of Mr. Burchett developed into child molestation (Pedophilia). His present diagnosis is that of a character disorder in which exhibitionism still persists. He stated that this character disorder is considered a *mental illness* but not specifically a psychotic mental illness. He further testified that in his opinion Mr. Burchett was dangerous to the health or safety of himself since if he were involved in a pedophilic act which

would inspire some parent or individual to take action, there was a high probability that he could be killed. He also testified that Mr. Burchett is anguishing over his condition and has feelings of self-destruction. The doctor opined that as far as dangerousness to others was concerned, if he were not in the Arizona State Hospital or in a prison there was a possibility of pedophilic involvement which would be dangerous to others. The doctor also testified that because of Mr. Burchett's sexual tensions he would accept a homosexual relationship on a passive basis which, in the prison setting, might lead to his being killed.

When asked by appellant's attorney as to whether Burchett's condition also amounted to a substantial impairment of his mental health, Dr. Tuchler testified:

"This is primarily the problem. His mental health is indeed substantially impaired because he cannot control the impulses and needs assistance in understanding not only their origin but help in the technique of controlling. It is a problem more of maturation than of external controls."

Dr. Tuchler was of the opinion that group therapy and individual therapy would be beneficial to Mr. Burchett and that he should be treated at the Arizona State Hospital.

Dr. Gorman testified that Mr. Burchett had a personality disorder which constituted a substantial impairment of mental health. He had observed Mr. Burchett throughout the past three years that he had spent at the Arizona State Hospital and was of the opinion that Mr. Burchett had benefitted to a slight degree from the treatment he had received in the hospital. He further believed that Mr. Burchett had a much better chance to improve himself and to make a better adjustment to the world by receiving the benefit of treatment at the Arizona State Hospital than if he were given whatever treatment might be available to him at the Arizona State Prison. Dr. Gorman was of the opinion that Mr. Burchett might be dangerous to the health or safety of himself or to others because he had been unable to

rid himself of fantasies and impulses to perform unwanted acts despite the fact that he had received therapy.

Testifying for the state was Dr. Harrison Baker, chief psychiatric medical officer of the medical-legal security section at the Arizona State Hospital. Mr. Burchett had been under this care since September of 1973. His diagnosis was a personality disorder. He did not believe that Burchett was dangerous to himself or dangerous to others. In the prison milieu he believed that Mr. Burchett's exhibitionism would be annoying but not dangerous to him personally. He testified that there was nothing in his examination of Mr. Burchett or in his medical records which would reflect that Mr. Burchett had any suicidal tendencies, and that he did not suffer from any substantial impairment of his mental health or impairment of thought, cognition or memory. He did not believe that the treatment available at that time in the state hospital would be more beneficial to him than the treatment available at the Arizona State Prison. He gave two reasons for this conclusion: (1) Mr. Burchett's problem did not interfere with his ability to be able to think, act, or interact with people, and therefore, his interpersonal relations are of the type which are equally as acceptable in one setting as in the other; and (2) there was no program at the Arizona State Hospital designed for the sexual psychopath. Dr. Baker's opinion was also shared by Dr. Matty, staff psychiatrist at the Arizona State Hospital.

Counsel stipulated at trial that appellant was not impaired in terms of thought, cognition or memory.

The procedure for the commitment of prisoners to the Arizona State Hospital is contained in A.R.S. § 31–224, added Laws 1975, Ch. 111, § 3. Subsection E of the foregoing statute sets forth the criteria for either voluntary or involuntary admission. In order to be transferred to the Arizona State Hospital the evidence must disclose (1) that the prisoner suffers from a psychiatric disorder to such a degree that he may be dangerous to the health or safety of himself or others, or, (2) the prisoner suf-

fers from a substantial impairment of his mental health, such that treatment in the state hospital will be more beneficial to him than the treatment available or confinement in a facility operated by the Department of Corrections.

Appellant claims that the evidence clearly shows that he is qualified for transfer to the Arizona State Hospital and that the trial court abused its discretion in failing to do so. Appellees claim that the evidence shows appellant has nothing but a personality disorder and that a person with such a disorder cannot be transferred to the Arizona State Hospital under A.R.S. § 31–224. Under appellees' version of the statute a prisoner cannot be transferred to the Arizona State Hospital unless he is psychotic.

The argument here revolves around the meaning of "psychiatric disorder" and "impairment of mental health".

Ever since the enactment of § 3587, Revised Statutes 1901, there has been a separate section in our law dealing with the mentally ill prisoner. And, up to 1975, the statute dealing with this subject was integrally woven with general statutes dealing with commitment to the Arizona State Hospital since the procedure under the general statutes was applicable to the procedure for the transfer and commitment of the prisoner to the Arizona State Hospital.

In 1974, there was a substantial change in our mental health code. The term "mental illness" was discarded for the term "mental disorder". Accordingly, § 31–224 was amended by our legislature in 1974 by Laws 1974, Ch. 185, § 2 to substitute the words "mental disorder" for the words "mental illness". As was customary with prior statutes dealing with the commitment of prisoners to the Arizona State Hospital, the statute as amended in 1974 provided that the appropriate procedure was that used in the statutes dealing generally with commitment to the Arizona State Hospital. There were other amendments made to the prisoner mental health statute in 1974. As was pointed out by David B. Wexler and Stanley E. Scoville in their article "The Administration of Psychiatric Justice, Prison-to-

Hospital Transfers", 13 Ariz.L.Rev. 174 (1971), there was no provision in the then-existing statute for a prisoner to initiate a petition for admission to the hospital. As the law then stood it was necessary for the superintendent of the prison to initiate the petition in order for the prisoner to be committed. This was changed in the 1974 amendment. Furthermore, the good-time credits that a person could earn while in the Arizona State Prison were not available to the prisoner who was committed to the Arizona State Hospital. This, too, was cured by the 1974 amendment. The Law Review article also pointed out that when prisoners were transferred to the Arizona State Hospital they did not usually receive any psychiatric treatment, but nothing was done in the 1974 amendment to cure this deficiency.

Largely as a result of the lobbying of appellant's attorney, A.R.S. § 31–224 was amended in 1975. The current language of subsection E thereof states:

"If a prisoner is determined to be suffering from a psychiatric disorder to such a degree that he may be dangerous to the health or safety of himself or others or suffers from a substantial impairment of his mental health, such that treatment in the state hospital would be more beneficial to him than will be treatment available or confinement in a facility operated by the department of corrections, the court shall order and direct that the prisoner be transferred to the Arizona state hospital in the legal custody of the department of corrections. . . ."

 Under this subsection if the prisoner is suffering from a psychiatric disorder to such a degree that he would be dangerous to the health or safety of himself or others he has an unqualified right to treatment in the state hospital. However, if he is only suffering from a substantial impairment of his mental health there must first be a determination by the court that treatment in the state hospital would be more beneficial to him than treatment or confinement in the facility operated by the department

of corrections. In examining A.R.S. § 31–224(E) we note that the phrase ". . . such that treatment in the state hospital would be more beneficial to him than will be treatment available or confinement in a facility operated by the department of corrections . . ." is preceded by a comma. At first blush the phrase would appear to modify both the phrase dealing with the prisoner suffering from a psychiatric disorder as well as the phrase concerning the prisoner suffering from substantial mental impairment. But we also note that subsection A of A.R.S. § 31–224 which uses the same language in connection with the symptoms required for a voluntary or involuntary petition for transfer to the state hospital does not contain the comma. We conclude that the use of the comma in subsection E was an oversight. It would be illogical to conclude otherwise since if the phrase were meant to modify both phrases there would have been no need to refer to the prisoner suffering from a "psychiatric disorder" who may be dangerous to himself or others because such a person necessarily is suffering from a substantial mental impairment.

We find this position fortified by subsection F of A.R.S. § 31–224 which provides, in part:

". . . When, in the opinion of the superintendent of the state hospital, the prisoner no longer suffers from a psychiatric disorder to such a degree that he may be dangerous to the health or safety of himself or others or no longer suffers from a substantial impairment of his mental health such that treatment in the state hospital is more beneficial to him than would be treatment available or confinement at a facility operated by the department of corrections . . ."

As amended in 1975, A.R.S. § 31‑224 contains its own procedure for voluntary and involuntary commitment and no longer makes reference to the general mental health laws as far as procedure is concerned.

A.R.S. § 31–224 contains no definitions. We do not believe that the legislature, by providing a specific procedure for the commitment of the prisoner and eliminating any reference to the procedure set forth in the general mental health code, A.R.S. § 36–501 et seq., intended to set sail on "uncharted seas" and have us fish for our own definitions. We believe the intent of the legislature was to make available to the prisoners the same mental health services available to the general public within the limitations imposed by the fact that a prisoner is already in custody. A.R.S. § 36–501 et seq., the general mental health statutes, and A.R.S. § 31–224 have a common purpose. Both are designed to provide mental health services for a segment of our population. We therefore believe that they are in pari materia and that the definitions in A.R.S. § 36–501 apply to the words used in A.R.S. § 31–224.

It is conceivable that if we were to adopt appellant's contention and hold otherwise the population of the Arizona State Prison might end up in the Arizona State Hospital. Appellant urges us to follow the definition of psychiatric disorder as adopted by the *American Psychiatric Association Diagnostic and Statistical Manual* (2nd Ed. 1968). This manual includes, inter alia, as mental disorders, the following: antisocial personality, explosive personality, homosexuality and alcoholism. The same reasoning of the psychiatrists who testified on behalf of the appellant could be applied to any one of these categories with a conclusion that the person is dangerous to himself and others and therefore has an unqualified right to be transferred to the Arizona State Hospital. We do not believe that the legislature intended such a result. In this respect we note that although A.R.S. § 31‑224 uses the term "psychiatric disorder" instead of "mental disorder" the two terms are synonymous.[1]

---

1. See definition of mental disorder Schmidt, Attorney's Dictionary of Medicine, Vol. 1, p. M–43.

A.R.S. § 36–501(18) defines the term "mental disorder" as follows:

"'Mental disorder' means, for the purposes of this chapter, a substantial disorder of the person's emotional processes, thought, cognition or memory. 'Mental disorder' is distinguished from:

\* \* \* \* \* \*

(c) Character and personality disorders characterized by lifelong and deeply ingrained anti-social behavior patterns, including sexual behaviors which are abnormal and prohibited by statute unless the behavior results from a mental disorder."

■ From the testimony of the psychiatrists it is clear that appellant was not suffering from a mental disorder as defined by the foregoing statute, but was suffering from "substantial impairment of his mental health." The latter term is not defined in A.R.S. § 36–501; however, we believe that the legislature intended by its use to give to the prisoners the same opportunity for treatment for a personality disorder as is given to the general public. Under A.R.S. § 36–518(A) a member of the general public can be voluntarily committed to the Arizona State Hospital if he is suffering from a personality disorder and if the medical director of the agency to which the person applies or the admitting officer of such agency believes that the person needs evaluation or he will benefit from care and treatment. There are some differences between A.R.S. § 31–224 and A.R.S. § 36–518. Under A.R.S. § 31–224(E) a person suffering from a personality disorder can be involuntarily committed. While this would not be acceptable to the general public it is acceptable as far as a prisoner is concerned since he is already in custody. Furthermore, under A.R.S. § 31–224(E) in order for the person with the personality disorder to be eligible for commitment there must be a finding that the treatment in the Arizona State Hospital would be more beneficial to him than the treatment available at the Arizona State Prison.

■ From our reading of the transcript we are convinced that the trial judge did not believe the treatment in the state hospital would be more beneficial to appellant than the treatment available at the state prison if treatment in fact were provided at the Arizona State Prison. A.R.S. § 31–201.-02(B) provides:

"In addition to the medical and health services to be provided pursuant to subsection D and in addition to the procedures to be followed pursuant to § 31–224, the superintendent shall in cooperation with the department of health services provide to prisoners psychiatric care and treatment at the state hospital."

Contrary to appellant's contention the foregoing statute does not provide that psychiatric services can only be provided in the Arizona State Hospital. We believe that the purpose of subsection B is to make up for the deficiency noted by Wexler and Scoville and place a positive duty upon the superintendent of the Arizona State Prison to cooperate with the department of health services to see that those prisoners who are transferred to the Arizona State Hospital for psychiatric care and treatment are not neglected but actually do receive the treatment for which they were committed. Subsection B is not intended to provide a separate and distinct procedure for transfer to the Arizona State Hospital.

As we construe the order of the trial judge, he believed that appellant could be beneficially treated in confinement at the Arizona State Prison if the required psychiatric services were provided. However, if within 30 days the superintendent of the prison did not provide the services then treatment in the state hospital would be more beneficial to him.

In order to comply with the obvious intent of the trial court and the applicable statute, Paragraph 6 of the order entered by the trial court is modified to read as follows:

"IT IS FURTHER ORDERED, that the Superintendent of the State Prison within 30 days after this order becomes effective, shall provide mental health services for James Burchett either at the prison or

some other suitable facility. In the event that the superintendent of the prison does not provide such services, the said James Burchett shall, pursuant to A.R.S. § 31–224(E) be transferred to the Arizona State Hospital in the legal custody of the Department of Corrections."

The order of the trial court is affirmed as modified.

RICHMOND, J., concurring.

HATHAWAY, Judge, specially concurring.

The evidence, as outlined in the majority opinion, supports the trial court's conclusion that the appellant "is a sexual psychopath suffering from personality disorder and that [he is amenable] to treatment." The court ordered treatment of appellant within 30 days and upon failure thereof his transfer to the Arizona State Hospital for treatment is consonant with the options for dealing with a prisoner suffering from a substantial impairment of his mental health. A.R.S. § 31–224(E). I would affirm on this basis.

I decline the strained construction and circuitous route of the majority. I believe they have forgotten their intent to avoid "uncharted seas" and have become embattled with an imaginary leviathan.